UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. S2-4:15 CR 348 HEA / DDN |
| | ) | |
| KEISHA EDWARDS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **ORDER AND RECOMMENDATION**

Before the court are the pretrial motions of defendant Keisha Edwards (1) to suppress evidence (ECF Nos. 24, 69 oral; 130); (2) for disclosure of evidence pursuant to Federal Rules of Evidence 404(b) and 609 (ECF No. 131); (3) for disclosure of expert testimony (ECF No. 132); and (4) for an order that agents preserve their investigative notes (ECF No. 133). These matters were taken under submission following a hearing on September 7, 2016, and a supplemental hearing held on October 7, 2016.

September 7, 2016 hearing

During the hearing held on September 7, 2016, counsel for the government confirmed that in response to the motion of defendant Edwards to suppress evidence, the government offers the transcript (ECF No. 126) of the pretrial evidentiary suppression hearings held on April 27, May 19, and May 26, 2016, on the motion of co-defendant Thomas Szczerba, subject to further questioning by defendant Edwards's counsel. Defense counsel agreed to this procedure with respect to the suppression issues raised by defendant Edwards's motion. However, with respect to the video recording of the motel room interior by the police, defense counsel asked the court to review the video and to consider the arguments defendant makes for the suppression of the video.

Further, in response to the motions for the preservation of agents' investigative notes, the government agreed to direct the agents to preserve those notes, while the government retained the right to object to the actual production of those notes to defendant. (ECF No. 143 at 2.) Regarding the defendant's motions for the disclosure of expert testimony and Rule 404(b) and Rule 609 evidence, counsel for the government agreed to provide defendant with any and all evidence and information it was required by law to produce for defendant. (*Id.* at 1-2.)

October 7, 2016 hearing

At the hearing held on October 7, 2016, counsel for defendant Edwards advised the court regarding defendant's pending motions to suppress evidence. Counsel stated that defendant would rely on the transcript of the suppression hearing held on the motion of co-defendant Thomas Szczerba on April 27, 2016. (ECF No. 126.) Also, defendant's counsel asked the court to review the video recording of the view of the defendant's motel room taken by the police when the defendants were arrested. A compact disk of that video recording has been provided to the court. (Supp. Hearing Ex. 1.)

## **FACTS**

Regarding the motions of defendant Keisha Edwards to suppress evidence, from the record adduced during the suppression hearing held on motion of co-defendant Thomas Szczerba to suppress, the undersigned hereby restates the findings of fact set forth in the Report and Recommendation filed on June 7, 2016 (ECF No. 121), supplemented only by the undersigned's viewing of the police video recording of the defendants' motel room:

1. On July 16, 2015, St. Louis Metropolitan Police Detective Sergeant Patricia Nijkamp was assigned to investigate human trafficking and sexual exploitation. On that date, at approximately 6:00 a.m., in conjunction with a 911 emergency phone call, Det. Richard Brown contacted Sgt. Nijkamp and advised her that a woman,

hereinafter referred to as "BM"[1], had been seen running barefoot from her pimp and that the woman was now hiding behind a dumpster. Sgt. Nijkamp was told that BM, who was approximately 22 years old, had been interviewed by Officer Lawrence Matthews, and that BM, while she was hiding behind the dumpster, had a friend call the police for her. After speaking with Officer Matthews, Sgt. Nijkamp directed officers to take BM to a local hospital for medical attention. Sgt. Nijkamp herself went to the hospital to interview BM.

2. At the hospital BM gave Sgt. Nijkamp the physical descriptions of two people who were requiring her to be a prostitute, one of whom was her male pimp. She identified the two as Thomas Szczerba and Keisha Edwards, and she described their physical characteristics. BM told Sgt. Nijkamp that she was not from Missouri but had come from Houston, Texas. Before Texas, she had lived in Louisiana. BM told Sgt. Nijkamp that Szczerba and Edwards brought her from Texas to Missouri, and that these were the people she had run away from earlier that morning. BM told the officer the ways Szczerba had prevented her from using her cell phone; that he prevented her from eating or resting unless she had earned $1,000.00 each day; and that he forced her to work during her menstrual period. BM told the officer that Szczerba and Edwards were then in Room 359 of the Westin Hotel in St. Louis.[2] BM also stated that Szczerba and Edwards had transported her from Texas to Missouri in a gold colored Mercedes automobile. Sgt. Nijkamp believed that BM's information was reliable, because she appeared scared and shaken up by her experiences. Police later located the gold Mercedes in the Westin Hotel parking lot.

3. While at the hospital, Sgt. Nijkamp directed other officers to go to the Westin Hotel. Sgt. Nijkamp also provided these officers the physical descriptions of Szczerba and Edwards given to her by BM. She then went to the hotel herself.

---

[1] Upon oral motion of counsel for the government, the undersigned ordered that the transcript of this hearing refer to the subject woman only by these initials.

[2] Sgt. Nijkamp determined that Room 359 was registered to Keisha Edwards.

4. Sgt. Nijkamp arrived at the hotel at approximately 11:00 a.m. She went to Room 359. There she located the two suspects, Thomas Szczerba and Keisha Edwards, whom she identified by the descriptions BM had given her. Szczerba and Edwards were then arrested. Nijkamp asked the two whether they would consent to a search of Room 359 so the officers would not have to get a search warrant. Szczerba and Edwards refused to consent. Nijkamp observed the condition of the room's interior.[3] She then locked and secured the room in order to preserve it while she went to apply for a search warrant.

5. The police found the gold Mercedes vehicle that BM had described in the hotel parking lot. Sgt. Nijkamp ran the vehicle's Texas license plate and found that the vehicle was registered to Keisha Edwards.

6. Sgt. Nijkamp thereafter went to apply for a Missouri circuit court search warrant for the vehicle and the hotel room.

7. In her sworn, written affidavit in support of a search warrant, Sgt. Nijkamp stated the following investigatory facts the police had developed. Around 5:27 a.m. on July 15, 2015, victim BM, who had been born in 1992, called 911 after escaping from two people who had forced her to prostitute herself. BM said her traffickers' location was Room 359 in the Westin Hotel at 811 Spruce Avenue in the City of St. Louis. The room was rented in Keisha Edwards's name. The affidavit described the information provided by BM that, five to six weeks earlier she reluctantly began prostituting herself and giving the proceeds to Szczerba, and that Szczerba and Edwards photographed BM and advertised her availability on the internet. BM told the detective that they had

---

[3] In her observation of the condition of the hotel room's interior, Sgt. Nijkamp made an audio-video record of its condition. (Supp. Hearing Ex. 1, DVD.) The undersigned has reviewed this recording. From this review, the undersigned finds the following facts. Sgt. Nijkamp entered the hotel room, walked through the hotel room, including the bathroom, and video recorded the items observed. As indicated by her oral statements in the audio-video recording, she had two purposes for making the recording. First, she wanted to inventory and document the contents of the hotel room to avoid a later claim that items were later missing. Second, she wanted to record the contents and condition of the room for criminal investigatory purposes.

traveled to Chicago, Illinois, and Wisconsin, before arriving in St. Louis five days earlier. During this time, BM was in a constant state of fear for her safety because Szczerba was threatening to beat her. The affidavit described other violent actions Szczerba used to force BM to prostitute herself. Szczerba forced BM to prostitute herself during her menstrual cycle by using a makeup sponge as a feminine hygiene product. When Szczerba wasn't able to remove the makeup sponge from BM's vaginal cavity with tweezers, BM screamed with pain to such an extent that other hotel residents complained and Szczerba drove her to a hospital for treatment. BM told the police that there were numerous items of evidence of the crime of trafficking for the purpose of sexual exploitation in the suspects' hotel room and vehicle; these items of evidence included "cell phones, lap top computers, large amounts of cash, condoms, and lubricant as well as the receipts and paperwork." (Gov. Ex. 1 at 1–2, ECF No. 102-1.)

The affidavit concluded:

> With these facts in mind, I respectfully request that a search warrant be granted [(sic)] Westin Hotel Room #359, located in the City of St. Louis at 811 Spruce Avenue as well as the vehicle used in this crime, a Gold 2003 Mercedes having a Texas License plate of CMV7329 and a VIN #WDVNG70J83A373917 registered to suspect Edwards.

(*Id.*)

8.  At 4:10 p.m. on July 16, 2015, a St. Louis City circuit judge issued the search warrant. The operative language of the warrant was as follows:

> [a][4] Whereas, a complaint in writing, duly verified by oath, has been filed with the undersigned Judge of this court, stating upon information and belief, that the following to wit:
>
> [b] Hotel Room #359 of the Westin Hotel, Located at 811 Spruce Avenue, St. Louis, MO. Registered to suspect Keisha Edwards, DOB    /1992.
>
> [c] 2003 Golf Mercedes vehicle having a Texas license plate of CMV7329 and VIN #[**********] parked at or near 811 Spruce Avenue and registered to Keisha Edwards, DOB   /1992.

---

[4] The undersigned has applied bracketed lettering to the separate paragraphs of the warrant to facilitate the discussion of the parties' arguments below.

[d] Whereas, the Judge of this Court from the sworn allegations of said complaint and from the supporting written affidavits filed therewith has found that there is probable cause to believe that the allegations of the complaint to be true and probable cause for the issuance of a search warrant therein;

[e] Now, therefore, **these are to command you that you search the said person above described** within 10 days after the issuance of this warrant by day or night, and take with you, if need be, the power of your county, and if said above described property or any part thereof be found on the said person by you, that you seize the same and take same into your possession, making a complete and accurate inventory of the property so taken by you in the presence of the person from whose possession the same is taken and giving such person a copy of this warrant.

(*Id.* at 3) (bolding added).

9. After the search warrant was issued, Sgt. Nijkamp read the warrant and believed it authorized the police to search Room 359 and the gold Mercedes, and to seize from those places items that related to the current investigation of human sex trafficking.

10. At approximately 5:00 p.m. on July 16, 2015, the police searched Room 359, the gold Mercedes vehicle, and the person of Keisha Edwards. On July 22, 2015, the inventory of the items seized was filed with the Clerk of the Circuit Court. (*Id.* at 4–5.)

11. a. From Room 359 were seized triangle makeup sponges, iPhones, various phone chargers, various "sex toys," a bottle of medicine, medical paperwork, two Mercedes vehicle keys, packaging for lubricant and condoms, condoms, package of cleansing tissue, dental dams, a pink bag containing condoms, a Kindle, a Bose speaker,[5] a watch belonging to Szczerba, and a Mophie brand battery charger.

   b. From the gold Mercedes vehicle were seized various receipts and records, a blue date book, a black notebook, and a black whip.

---

[5] The record is unclear about what type of Bose device was seized. The undersigned takes judicial notice that Bose manufactures electronic audio speakers and related devices. Fed. R. Evid. 201; https://www.bose.com/en_us/index.html (last viewed June 6, 2016).

c. From the person of Keisha Edwards Items were seized 2 iPhones.

d. The gold Mercedes vehicle was seized from the parking lot. (*Id.*)

12. Szczerba's wallet was also seized during the investigation. The wallet contained a handwritten note with BM's personal information, 3 gift cards, a document stating a Scottrade account number, a Pinnacle Entertainment card, a Casino card, a Trop Advantage card, and a Trop Awards card. Based upon certain papers and records seized from Szczerba's wallet, the grand jury issued subpoenas to third parties for certain financial data and information.

## **DISCUSSION**

Defendant Edwards seeks to have the items suppressed that were seized from her person, her automobile, and the hotel room, and she argues for the suppression of the audio-video recording of the interior of the hotel room. She argues that the search warrant that was executed by the searches of the automobile and the hotel room was constitutionally defective, and that the warrantless audio-video recording of the hotel room was unlawful. Finally, she argues that the good-faith exception to the exclusionary rule is inapplicable to the facts of this case.

### **The language of the search warrant**

Defendant Edwards argues, as did co-defendant Szczerba, that the operative language of the search warrant authorized a search only of the person of defendant Edwards, and not a search of Room 359 or a search of the gold Mercedes. Therefore, the searches of the Mercedes and of Room 359 were warrantless.

The government argues that the subject search warrant was based upon probable cause to search the gold Mercedes and Room 359 established by Sgt. Nijkamp's affidavit which was signed by the issuing judge and incorporated into the warrant issued by the same judge. The government argues that the language of the warrant which authorized the search of Keisha Edwards was a clerical error which should be disregarded.

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

*U.S. Const. amend. IV*. The warrant requirement of the Fourth Amendment requires that the warrant be founded on probable cause, particularly describe the place(s) to be searched, and particularly describe the items to be seized. *Groh v. Ramirez*, 540 U.S. 551, 557 (2004) (ruling that the warrant was "plainly invalid" because it lacked a description of the items to be seized).

An affidavit establishes probable cause to support the issuance of a search warrant when it "sets forth facts sufficient to create a fair probability that evidence of a crime will be found in the place to be searched"; "[a]dditionally, probable cause may be established by the observations of trained law enforcement officers or by circumstantial evidence." *United States v. Terry*, 305 F.3d 818, 822-23 (8th Cir. 2002). A finding of probable cause may be founded on information from a reliable individual, especially, as in the present case, when the police are able to corroborate the individual's information. *United States v. Draper*, 358 U.S. 307, 313 (1959). For these determinations this reviewing court should look to the totality of the relevant circumstances. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "Applications and affidavits for issuance of a warrant should be examined under a common sense approach and not in a hypertechnical fashion." *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993) (citing *United States v. Ventresca*, 380 U.S. 102, 109 (1965)).

In this case, Sgt. Nijkamp's affidavit provided sufficient information for the circuit court to find probable cause to believe that evidence of human sex trafficking would be found in Room 359 and in the gold Mercedes. BM, Sgt. Nijkamp's first-person informant and victim of the described perpetrators, told the officer that all three had been and were residing in Room 359 and that they had traveled in the gold Mercedes through several states for her to engage in prostitution. BM provided a wealth of factually specific

information about these unlawful activities and much information about the evidence that would be found in the vehicle and in the room.

Whether or not the officer's affidavit established probable cause, however, is not the cardinal issue before the court. The issue is whether the state circuit court issued a constitutionally sufficient and valid search warrant following the submission of the affidavit.

A constitutionally sufficient warrant must provide "enough description so that an officer executing the search can reasonably ascertain and identify the target of the search with no reasonable probability of searching another premises in error." *United States v. Valentine*, 984 F.2d 906, 909 (8th Cir. 1993).

The warrant in this case did not accurately describe the locations intended by the affidavit to be searched, and it did not particularly describe the items to be seized. The specific language of the warrant did not authorize searching Room 359 or the gold Mercedes. In fact, the warrant's drafter appears to have omitted language from the warrant. First, paragraphs [a]–[c] merely refer to Room 359 and the gold Mercedes. The relevance of the room and the vehicle is not stated in the warrant. Rather, paragraph [d] of the warrant stated that from the supporting document the court "has found that there is probable cause to believe that the allegations" in the supporting document are true and establish "probable cause for the issuance of a search warrant therein." (Doc. 102-1 at 3.)

The specific operative language of the search warrant in paragraph [e] authorized the search only of the "said person above described." The language of the warrant involved more than a typographical error, as the government urges. On the face of the warrant the only person "above described" in the warrant is Keisha Edwards. In the warrant, Keisha Edwards is not described as the location of items to be seized, but only as the person in whose name the gold Mercedes and Room 359 were registered. Furthermore, while paragraph [d] of the warrant referred to the "supporting written affidavit[]," it did so only to identify it as the basis for the finding of probable cause. (Id.) ("[w]hereas, the Judge of this Court from the sworn allegations of said complaint

9

and from the supporting written affidavits filed therewith has found that there is probable cause").

An affidavit which is incorporated into a search warrant may provide the constitutionally required particularity for the warrant. *Cf. United States v. Hamilton*, 591 F.3d 1017, 1024–27 (8th Cir. 2010) (warrant not approved because the incorporating language was vague); *United States v. Gamboa,* 439 F.3d 796, 806–07 (8th Cir. 2006) (the warrant "clearly incorporated" the document that provided the required particularity). A warrant *with no incorporating language*, such as the one at bar, cannot rely on the underlying affidavit's language to provide the constitutionally required language particularly describing the place(s) to be searched and the items to be seized. *Groh v. Ramirez,* 540 U.S. at 558-560.

The government relies on *United States v. Hamilton*. In *Hamilton*, evidence was seized pursuant to the execution of a state court search warrant that was argued to be legally insufficient because the officer who drafted it "unknowingly deleted the list of items to be seized from the face of the warrant." 591 F.3d at 1020-21. The relevant facts were further described by the Court of Appeals:

> However, the items were specified in Detective Rexford's affidavit, which accompanied the warrant application at the time the circuit judge signed and issued the warrant. Although the warrant referenced the affidavit with the words "See Attached Affidavit," the affidavit was not physically attached to the warrant when the warrant was executed on May 30, 2007, and there is no evidence in the record that the affidavit was available at the scene of the search. Detective Rexford executed the warrant and was aware of the items listed in the affidavit to be seized because he had drafted the affidavit.

*Id.* at 1021. The Eighth Circuit did not constitutionally approve that warrant, in relevant part because the language of the warrant was unclear about what part of the affidavit the judge incorporated into the warrant. Id. at 1027. Rather, suppression of the evidence was avoided by an application of the officer's good-faith reliance on the warrant. *Id.* at 1030.

In the case at bar, no language of the search warrant incorporated into the warrant to any reasonable degree any information from the underlying affidavit. In the

circumstances of this case, merely acknowledging the existence of the affidavit as the basis for the finding of probable cause is insufficient to incorporate the affidavit into the warrant.

The searches in this case were not authorized by the subject search warrant.

## Good-faith reliance on the issued warrant

Defendant argues that the good-faith exception to the exclusionary rule does not apply to a facially invalid search warrant. *United States v. Leon*, 468 U.S. 897, 923 (1984) ("[D]epending on the circumstances of the particular case, a warrant may be so facially deficient--i.e., in failing to particularize the place to be searched or the things to be seized--that the executing officers cannot reasonably presume it to be valid.").

This court may allow the use of evidence seized in the execution of a constitutionally insufficient warrant, if the officers acted in good-faith after obtaining the warrant upon a showing of probable cause from a neutral and detached magistrate. *See United States v. Leon*, 468 U.S. at 922–23. Suppressing the evidence seized pursuant to a constitutionally deficient warrant is appropriate where a deterrent against willful or negligent conduct resulting in the deprivation of a defendant's rights is needed. *See Leon*, 468 U.S. at 919 (quoting *United States v. Peltier*, 422 U.S. 531, 539 (1975)).

The good-faith exception to the exclusionary rule should not be applied if: (1) the affidavit upon which the warrant relies was knowingly or recklessly false; (2) the issuing judge was merely a rubber stamp for the police, instead of a neutral and detached judicial officer; (3) there is no substantial basis for a finding of probable cause; or (4) the warrant itself is so facially deficient that no reasonably well-trained executing officer could presume its validity. *Leon*, 468 U.S. at 914–15, 922-23; *United States v. LaMorie*, 100 F.3d 547, 555 (8th Cir. 1996). The exclusionary rule is not intended to punish the errors of issuing judges and should only be applied "in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Leon*, 468 U.S. at 916, 918.

After *Leon*, the Supreme Court ruled *Herring v. United States*, 555 U.S. 135 (2009). Herring was arrested upon faulty information about the existence of an

outstanding arrest warrant in a neighboring county. The actual warrant had been recalled five months earlier, but the recall information was not recorded in the sheriff's database. When this was learned 15 minutes later, Herring had already been arrested and drugs and a gun seized from him. 555 U.S. at 138. After his indictment, Herring moved to suppress the seized evidence because the underlying warrant had been recalled before he was arrested. The district judge adopted the magistrate judge's recommendation that the motion to suppress be denied, because the arresting officers had acted on a reasonable belief that the warrant was still in effect. The Court of Appeals for the Eleventh Circuit affirmed.

The Supreme Court affirmed the Eleventh Circuit. It ruled that the application of the exclusionary rule depended on several factors, including the efficacy of the exclusionary rule in deterring future Fourth Amendment violations, whether the benefits of such deterrence outweighed its substantial social costs, whether the police had acted "'in objectively reasonable reliance' on the subsequently invalidated search warrant," and whether the police conduct had been sufficiently deliberate so that the exclusion of evidence will meaningfully deter it in the future. *Herring*, 555 U.S. at 141-45.

In addition, the Third Circuit has indicated that whether or not the *Leon* good-faith avoidance of the exclusionary rule should be applied, this court should look at the totality of the circumstances, including the investigating officers' "conduct in obtaining and executing the warrant and what the officer[s] knew or should have known." *United States v. Wright*, 777 F.3d 635, 639 (3rd Cir. 2015) (quoting *United States v. Tracey*, 597 F.3d 140, 147 (3rd Cir. 2010)).

In *Wright*, the agent prepared a warrant application for the search of an apartment. That portion of the warrant identifying the items to be seized incorporated by reference the probable cause affidavit prepared by agent that was attached to the warrant. The affidavit listed the items the agent expected would be found in the apartment. After a magistrate judge approved the application and signed the warrant and affidavit, but before the warrant was executed, the affidavit was removed from the warrant to protect the ongoing investigation. When the search was conducted the agent did not notice that

12

the affidavit was no longer attached to the warrant and that the warrant did not include a list of the items to be seized. *Wright*, 777 F.3d at 637. The district court suppressed the items seized because it concluded under *United States v. Leon* that the good-faith exception to the exclusionary rule was not applicable to the execution of a facially invalid warrant. The Third Circuit Court of Appeals vacated the district court's ruling and remanded the case for consideration in light of *Herring*. *Id.* at 638. On remand the district court denied the motion to suppress, because at most the actions of the agent in failing to review the warrant before the search was a simple mistake and at most negligence to which the exclusionary rule ought not to be applied. *Id.* The Third Circuit Court of Appeals affirmed.

The Court of Appeals considered paramount the degree of "culpability of the agents and prosecutors who failed to ensure that a list of items to be seized was attached to the warrant that was executed." *Id.* at 639. The Court determined that the circumstances of the search did not abjure the purposes of the need for the warrant to include a list of the items to be seized, *i.e.* to indicate that the issuing judge found probable cause for seizure of the listed items, to prevent a general search, and to show the subject of the search that the search was lawfully authorized. *Id.* at 640.

Defendant Edwards cites *Groh v. Ramirez*, 540 U.S. 551 (2004), for the disqualification of the good-faith exception to the exclusionary rule. That case is inapposite to this one. *Groh* involved a § 1983 civil claim that Fourth Amendment rights were violated by the execution of a search warrant that failed to describe the persons or things to be seized pursuant to the warrant. In the place for the list of items to be seized the warrant described the house to be searched. 540 U.S. at 554. As in the case at bar, the Supreme Court described the subject warrant as "plainly invalid" under the Fourth Amendment. *Id.* at 557-63. The next issue ruled by the Supreme Court was *not* whether the *Leon* good-faith exception to exclusionary rule should be applied but whether the officer who executed the warrant "is entitled to qualified immunity despite that violation [of the Fourth Amendment]." *Id.* at 563. The Court determined that the officer who executed the warrant was not entitled to qualified immunity. *Id.* at 566.

13

The issue before this court is not whether the officer may avoid civil liability for conducting a search pursuant to a constitutionally deficient warrant but rather whether the court should suppress the government's use at trial of evidence seized pursuant to the constitutionally deficient warrant or apply the good-faith *Leon* exception. The principles and essential elements of each are different. As set forth above, the application of the *Leon* exception depends on an analysis of the objective reasonableness of the officer's conduct and a social cost-benefit analysis, *Herring*, 555 U.S. at 141-45, and the application of the qualified immunity doctrine depends almost entirely on whether an effectively warrantless search of a home was "presumptively unconstitutional." *Groh*, 540 U.S. at 656.

In *United States v. Curry*, 911 F.2d 72 (8th Cir. 1990), the Court of Appeals applied the *Leon* good-faith exception to the exclusionary rule to a case involving a "search warrant that did not identify the premises to be searched because the space for filling in that information was left blank." 911 F.2d at 76. The Court of Appeals stated:

> The search was directed by Detective Swanson, the officer who prepared the application and the affidavit. This fact is significant because in assessing whether reliance on a search warrant was objectively reasonable under the totality of the circumstances it is appropriate to take into account the knowledge that an officer in the search officer's position would have possessed. The magistrate determined there was no evidence that Detective Swanson acted other than in good-faith in applying for the search warrant, and found that the failure to completely fill out the warrant form was more a clerical error than an indication of bad faith. "The responsibility for the inadvertent omission of the address on the warrant itself, must be born by the [issuing official], as the final reviewing authority. Because "the exclusionary rule does not serve to deter the errors of judges, but rather the errors of police officers," suppression in this case would not further the purposes of the rule. For these reasons, we agree with the district court's determination that the *Leon* exception applies to the first warrant search.

*Id.* at 78 (internal citations omitted).

In the case at bar, Sgt. Nijkamp and the other officers who searched Room 359 and the gold Mercedes reasonably relied on the search warrant as authority for their searches. While paragraphs [b] and [c] of the warrant, which clearly focus on Room 359

and the gold Mercedes, appear detached from the rest of the warrant, they clearly and immediately present to the reader's eye the two locations that Sgt. Nijkamp knew were the subjects of her affidavit and were the expected locations for authorized searches. While paragraph [e] refers to searching "the said person above described," Sgt. Nijkamp knew that Keisha Edwards was a suspect in the investigation. Further, the warrant refers to (although it does not incorporate) Sgt. Nijkamp's affidavit, which clearly describes the locations to be searched (the hotel room and the vehicle) and the items to be seized (cell phones, lap top computers, large amounts of cash, condoms, lubricant, and the receipts and paperwork relating to the alleged crime). (Doc. 102-1 at 3.)

Furthermore, Sgt. Nijkamp was most mindful of the Fourth Amendment warrant requirement. She first asked the two suspects whether they would consent to a search of Room 359 to avoid her having to apply for a warrant. When they refused to consent, she secured both the hotel room and the vehicle and then applied for a search warrant. Her affidavit concealed no facts from the judge. No hearing evidence other than the warrant document itself indicated that the issuing judge did not act as a neutral and detached judicial officer. There was ample probable cause in the supporting affidavit for the issuance of a constitutionally valid warrant for the hotel room and the Mercedes automobile. Therefore, even with the defective language of the warrant, the good-faith doctrine of *Leon* should be applied to avoid the exclusionary rule.

### **Scope of the searches**

The seized items were within the Fourth Amendment scope of the items to be seized. In the execution of a search warrant, officers are constitutionally authorized to seize not only the items listed on the warrant but any object in plain view, in a place where the officers lawfully are present, if that object's incriminating nature is immediately apparent. *United States v. Rodriguez*, 711 F.3d 928, 936 (8th Cir. 2013). The incriminating nature of an object may be based on the knowledge of the seizing officers. *See United States v. Banks*, 514 F.3d 769, 776 (8th Cir. 2008) (seizure of a gun case upheld, because one of the officers at the seizure knew defendant was a felon and a

gun case is likely to hold a firearm). "If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy." *Horton v. California*, 496 U.S. 128, 133–34 (1990).

As discussed above, the search warrant clearly referenced Sgt. Nijkamp's affidavit, which described the places to be searched and the items to be seized. Items specifically listed in the affidavit included "cell phones, lap top computers, large amounts of cash, condoms, and lubricant as well as the receipts and paperwork relating to the Crime of 'Trafficking for the Purpose of Sexual Exploitation.'" (Gov. Ex. 1 at 1, ECF No. 102-1 at 1.) The items seized from the hotel room by Sgt. Nijkamp included makeup sponges, four iPhones, a MacBook Pro, an Alcatel phone, $144 in US currency, various battery chargers, various sex toys, medicine prescribed to and medical paperwork for "Avery Monroe", lubricant, various condoms, a Kindle, a Bose audio speaker device, defendant Szczerba's watch, and a Mophie battery charger. (*Id.* at 5.) From inside the vehicle, police seized various receipts and paperwork, an aqua blue datebook, a black medium sized notebook, and a black whip. (*Id.*)

In the circumstances of this case, including what the victim told Sgt. Nijkamp, all of the seized items were reasonably considered evidence of defendant's trafficking in sexual exploitation. Co-defendant Szczerba's wallet and the documents in it are clearly contained within "receipts and paperwork." The makeup sponges were vividly described by the victim to Sgt. Nijkamp as being used to ensure she would continue to prostitute herself while on her menstrual cycle. The four iPhones, MacBook Pro, Alcatel cell phone, and Kindle fall within the category of digital devices ("cell phones" and "lap top computers"). The various sex toys, lubricant, and condoms seized are plainly evidence of the alleged crime, regardless of their otherwise legal nature. The prescription medication and medical records for "Avery Monroe" were reasonably seen as evidence of the victim's hospital visit after co-defendant Szczerba attempted to remove a makeup sponge being used as a feminine hygiene product with a pair of tweezers. (Gov. Ex. 1 at 1, Doc. 102-1 at 1.) Other items seized are reasonably seen as evidence of co-defendant

Szczerba's residence in Room 359: his watch, electronic device chargers, and the Bose device.

## ORDER AND RECOMMENDATION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the motion of defendant Keisha Edwards for disclosure of evidence pursuant to Federal Rules of Evidence 404(b) and 609 (ECF No. 131) is denied as moot.

**IT IS FURTHER ORDERED** that the motion of defendant Keisha Edwards for disclosure of expert testimony (ECF No. 132) is denied as moot.

**IT IS FURTHER ORDERED** that the motion of defendant Keisha Edwards for an order that agents preserve their investigative notes (ECF No. 133) is denied as moot.

**IT IS HEREBY RECOMMENDED** that the motions of defendant Keisha Edwards to suppress evidence (ECF Nos. 24, 69 oral; 130) be denied.

The parties have until November 14, 2016, to file written objections to this Order and Recommendation. The failure to file timely written objections may waive the right to appeal issues of fact.

                         /S/   David D. Noce
                         **UNITED STATES MAGISTRATE JUDGE**

Signed on October 26, 2016.